**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

MARK EDWARD HURST,

       **Plaintiff,**

     vs.                      **Civil Action 2:11-cv-1090
Judge Smith
Magistrate Judge King**

OHIO DEPARTMENT OF REHABILITATION
AND CORRECTION, *et al.*,

       **Defendants.**


**ORDER AND
REPORT AND RECOMMENDATION**

Plaintiff Mark Hurst, a former Ohio prison inmate, filed this action under 42 U.S.C. § 1983, naming as defendants the Ohio Department of Rehabilitation and Correction ("ODRC"), Gary Mohr, Mona Parks, Dr. David Weil, Karen Stanforth, Ralph Wilson, and six unidentified members of the "Collegial Review Committee", and alleging that defendants acted with deliberate indifference to plaintiff's medical needs in violation of the Eighth Amendment to the United States Constitution.  Earlier in these proceedings, ODRC was dismissed as a defendant, *Order*, Doc. No. 8, p. 1, and summary judgment was granted to all other defendants on all claims except the claim against defendant Dr. Weil in his individual capacity.  *Opinion and Order*, Doc. No. 52.  Plaintiff thereafter filed the *Amended Complaint*, Doc. No. 58, asserting claims against John Gardner and Dr. Andrew Eddy, the previously unidentified members of the "Collegial Review Committee," and Dr. Weil.

This matter is now before the Court on *Defendants' Motion for Summary Judgment*, Doc. No. 96, and on plaintiff's motions to strike, Doc. Nos. 98, 101, 103.  The Court will first consider plaintiff's motions to strike.

**MOTIONS TO STRIKE**

Plaintiff has filed two motions to strike *Defendants' Motion for Summary Judgment*.  Doc. Nos. 98, 103.  Plaintiff's motions challenge *Defendants' Motion for Summary Judgment* as untimely and as violative of the page limitation established by S.D. Ohio Civ. R. 7.2.

> **Limitation Upon Length of Memoranda.** Memoranda in support of or in opposition to any motion or application to the Court should not exceed twenty (20) pages.  In all cases in which memoranda exceed twenty (20) pages, counsel must include a combined table of contents and a succinct, clear and accurate summary, not to exceed five (5) pages, indicating the main sections of the memorandum, the principal arguments and citations to primary authority made in each section, as well as the pages on which each section and any sub-sections may be found.

S.D. Ohio Civ. R. 7.2(a)(3).  Although Rule 7.2(a)(3) expresses a preference that memoranda not exceed twenty pages, the rule in fact contemplates the filing of memoranda that exceed twenty pages and provides a procedure for doing so.  Prior leave of Court is not expressly required by either Rule 7.2 or the procedures of the undersigned, so long as the requirements of the rule are satisfied. *See id.  Defendants' Motion for Summary Judgment* substantially complies with these requirements.  Although the summary of argument provided by defendants lacks citations to primary authority, the Court does not find this default so egregious as to warrant the relief sought by plaintiff's motion to strike.

Plaintiff also asks that *Defendants' Motion for Summary Judgment*

2

be ordered stricken as untimely. Plaintiff specifically argues that defendants failed to meet the Court's March 19, 2014 deadline for filing motions for summary judgment and failed to seek leave to file their untimely motion.

The Court established March 19, 2014 as the date by which dispositive motions were to be filed. *Order*, Doc. No. 95 (granting defendants' third motion for an extension of time). *Defendants' Motion for Summary Judgment* was filed on March 20, 2014, at 12:46 a.m., *i.e.,* 46 minutes beyond that deadline. Defendants acknowledge that the filing was late and concede that they did not seek the permission of this Court for the late filing, Doc. No. 104, but they represent that their counsel "began the process of electronically filing Defendant's [sic] Motion for Summary Judgment at approximately 11:40 P.M. on . . . March 19, 2014." *Id*. at pp. 3-4. According to defense counsel, the process took more than one hour to complete because of the length and format of the filing. *Id*.

*Defendants' Motion for Summary Judgment* was untimely. However, the delay in filing was minimal, there is no risk of prejudice to plaintiff, and defendants' counsel represents that the delay was caused by a technical issue with the Court's electronic filing system. Under these circumstances, the Court declines to sanction defendants or to strike *Defendants' Motion for Summary Judgment*. *See* Fed. R. Civ. P. 16(f). Accordingly, plaintiffs' motions to strike *Defendants' Motion for Summary Judgment*, Doc. Nos. 98, 103, are **DENIED**.

Plaintiff has also filed a motion to strike evidence attached to *Defendants' Motion for Summary Judgment*. *Motion to Strike Evidence*, Doc. No. 101. Plaintiff challenges defense counsel's interpretation

3

of the evidence and argues that the medical records attached to *Defendants' Motion for Summary Judgment* are not properly authenticated because "these records can be authenticated [only] by the person that wrote and signed the document." *Id.* at p. 2.  Plaintiff's arguments are not well taken.

As an initial matter, "[e]xhibits attached to a dispositive motion are not 'pleadings' within the meaning of Fed. R. Civ. P. 7(a) and are therefore not subject to a motion to strike under Rule 12(f)." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006).  Second, the Court is satisfied that the medical records attached to *Defendants' Motion for Summary Judgment* have been properly authenticated.  *See Affidavit of Defendant David C. Weil, M.D.* ("*Dr. Weil Affidavit*"), Doc. No. 96-1, ¶¶ 1, 3, 5; Fed. R. Evid. 901 ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). Plaintiff's argument to the contrary notwithstanding, even a person who did not personally produce or sign a document may nevertheless authenticate the document.  *See, e.g.,* Fed. R. Evid. 901(b)(1), (7), (9). Finally, plaintiff objects to defendants' counsel's interpretation of the medical evidence.  *See Motion to Strike Evidence*, pp. 2-6.  A difference in the interpretation or significance of evidence is not a basis for striking that evidence. However, the Court will nevertheless consider plaintiff's objection to defense counsel's arguments in its consideration of *Defendants' Motion for Summary Judgment.* Plaintiff's *Motion to Strike Evidence*, Doc. No. 101, is likewise **DENIED**.

4

## MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment. Doc. No. 96. Plaintiff opposes the motion. *Plaintiff's Objection to Defendants' Motion for Summary Judgment*, Doc. No. 102. Defendants have not filed a reply. For the reasons that follow, it is **RECOMMENDED** that *Defendants' Motion for Summary Judgment* be **GRANTED**.

### 1. Background

Plaintiff alleges that, while he was incarcerated at the Madison Correctional Institution ("MaCI"), defendants acted under color of state law and in their official and individual capacities to deny him medical care in contravention of the Eighth Amendment to the United States Constitution. *Amended Complaint*, ¶ 9. Plaintiff specifically alleges that "he was denied necessary surgery and rehabilitation for a rotator cuff tear." *Id*. Plaintiff seeks compensatory damages, judgment declaring that defendants' failure to provide medical care was violative of the Eighth Amendment to the United States Constitution, and an injunction ordering defendants to pay for corrective surgery and rehabilitation. *Id*. at ¶ 10.

The record establishes that, on May 23, 2010, plaintiff submitted a health services request seeking medical attention for a right shoulder injury sustained while climbing into his bunk. *Defendants' Motion for Summary Judgment*, Exhibit A-1. Plaintiff complained of a torn rotator cuff and severe pain when raising or reaching with his right arm. *Id*. The ODRC Nursing Assessment/Protocol ("Nurses Sick Call") examined plaintiff the following day. *Id*. at Exhibit A-2. Plaintiff guarded his right arm, had decreased range of motion and

5

strength in his right arm, and was unable to push up. *Id*. Plaintiff was prescribed ibuprofen. *Id*.

Plaintiff submitted a second health services request on June 2, 2010, requesting x-rays of the shoulder. *Id*. at Exhibit A-3, p. 1. Plaintiff was treated in Nurses Sick Call on June 3, 2010, and was found to have full range of motion in his extremities and pain in his right shoulder. *Id*. at Exhibit A-4. Plaintiff was referred to Doctor's Sick Call. *Id*.

Defendant Dr. David Weil, a doctor employed by ODRC, saw plaintiff on June 4, 2010. *Dr. Weil Affidavit*, ¶ 10; *Defendants' Motion for Summary Judgment*, Exhibit A-3, p. 2. On initial examination, Dr. Weil determined that plaintiff held his right shoulder in a flexed and adducted position, had decreased range of motion in his right shoulder secondary to pain, and normal strength secondary to pain on abduction. *Dr. Weil Affidavit*, ¶ 10; *Defendants' Motion for Summary Judgment*, Exhibit A-3, p. 2. Dr. Weil suspected a rotator cuff tear. *Dr. Weil Affidavit*, ¶ 10; *Defendants' Motion for Summary Judgment*, Exhibit A-3, p. 2. Dr. Weil prescribed ibuprofen, 800 mg, for a two month period and a shoulder sling; he also ordered an orthopedic consultation and x-rays. *Dr. Weil Affidavit*, ¶ 11; *Defendants' Motion for Summary Judgment*, Exhibit A-5, p. 2. According to Dr. Weil, his examination of plaintiff "did not reveal anything that would warrant an immediate or accelerated consult with an orthopedist;" he anticipated the x-rays ordered by him would "be done promptly within a day or two." *Dr. Weil Affidavit*, ¶ 11.

6

Plaintiff submitted a third health services request on June 25, 2010, and was seen in Nurses Sick Call on June 26, 2010. *Defendants' Motion for Summary Judgment*, Exhibits A-6, A-7. Plaintiff exhibited decreased range of motion and complained of right shoulder pain. *Id*. at Exhibit A-7. It was noted that the "order for ortho [was] awaiting scheduler" and plaintiff was provided a 30 day bottom bunk restriction. *Id*. Plaintiff was again seen in Nurses Sick Call on July 25, 2010, and the bottom bunk restriction was continued for another 30 days. *Id*. at Exhibits A-8, A-9.

Plaintiff underwent an orthopedic consultation at The Ohio State University Medical Center on August 5, 2010. *Id*. at Exhibits A-3, p. 2; A-5. X-rays of the right shoulder revealed no bone, joint or soft tissue abnormalities. *Id*. at Exhibit A-10. Upon examination, plaintiff demonstrated full passive range of motion, no AC tenderness to palpation, no crossover sign or signs of weakness and impingement. *Id*. at Exhibit A-5. The orthopedist rendered a provisional diagnosis of "rotator cuff tear/tendinitis" and recommended an MRI. *Id*.

On August 10, 2010, Dr. Weil treated plaintiff for a skin lesion that had "disappeared." *Id*. at Exhibit A-12. Dr. Weil continued plaintiff's bottom bunk restriction for four months and his records also include the notation "MRI date set?" *Id*.

Plaintiff's prescription for ibuprofen was renewed on August 24, 2010. *Id*. at Exhibit A-13.

Plaintiff underwent an MRI on September 23, 2010. *Id*. at Exhibit A-14. That MRI was read as revealing a complete tear of the rotator cuff with retraction of the supraspinatus muscle and tendon, resultant

7

elevation of the humeral head, and abnormal signal in the humeral head likely related to a contusion with resultant edema. *Id*. No definite occult fracture was seen. *Id*.

Plaintiff submitted a health services request on September 27, 2010, and was seen in Nurses Sick Call on September 29, 2010. *Id*. at Exhibits A-15, A-16. The nurse ordered plaintiff to Doctor's Sick Call.

Dr. Weil treated plaintiff on October 14, 2010, to review the MRI and follow-up for his recent treatment for kidney stones. *Id*. at Exhibit A-17. Dr. Weil's notes indicate that plaintiff "would take surgery if offered." *Id*. Dr. Weil referred plaintiff for a follow-up orthopedic consultation. *Id*.

Plaintiff submitted a health services request on November 8, 2010, and was seen in Nurses Sick Call on November 9, 2010. *Id*. at Exhibits A-18, A-19. Plaintiff rated his pain at 6 or 7 out of 10; he had limited range of motion and weakness in the right arm. *Id*. at Exhibits A-19. The nursing care plan was to refer plaintiff to an advanced health provider immediately if there were severe, disabling pain or instability of a joint. *Id*.

Plaintiff was seen by an orthopedic consultant on December 5, 2010. *Id*. at Exhibit A-17. The orthopedist noted, "To OR for repair." *Id*.

On December 10, 2010, Certified Nurse Practitioner Holcomb ordered that shoulder surgery be scheduled. *Id*. at Exhibit A-21. Ms. Holcomb examined plaintiff on December 20, 2010, and noted decreased range of motion in the right shoulder and no visible edema. *Id*.

8

Plaintiff's prescription for ibuprofen was renewed on December 20, 2010, and February 7, 2011.  *Id*. at Exhibits A-23, A-24.

A Permedion precertification request form was completed on February 16, 2011.  *Id*. at Exhibit A-26.  The form indicates that plaintiff "NEEDS Arthroscopy RTC repair."  *Id*.

Dr. Weil cancelled surgery on March 4, 2011, as "not immediately medically necessary" and ordered a doctor's sick call "if pain persists."  *Id*. at Exhibit A-28.  A form titled "Verification of Cancellation" indicates that no surgery date had been scheduled.  *Id*.

Plaintiff was given a long-term bottom bunk restriction.  *See id*. at Exhibit A-30.

Plaintiff's ibuprofen prescription was renewed on March 7, May 12, June 13, July 14, August 26, September 26, and October 26, 2011. *Id*. at Exhibits A-28, A-31, A-32, A-33, A-37.

After his released from prison, plaintiff was treated on November 16, 2011 by David M. Jackson, M.D., who suggested treatment as follows:

> Advised the patient that his rotator cuff tear may not be repairable this long post injury – a concern is fixed contracture of the supraspinatus with muscle wasting that prevents pulling the rotator cuff back to its insertion for repair.  Rotator cuff repairs are more predictably repairable within a few months of injury.  It has been so long since she [sic] had an MRI I recommended another MRI to further evaluate to see if surgery for attempted rotator cuff repair is indicated.  I suspect repeat MRI will show large retracted tear now showing supraspinatus atrophy I would recommend a second opinion from a shoulder subspecialist as to whether attempted surgical repair is indicated.  Today with his current right shoulder condition I would recommend avoiding work that requires lifting or reaching at or above shoulder height.

Doc. No. 37, Appendix 7, pp. 2-5.  Plaintiff did not undergo the repeat MRI suggested by Dr. Jackson because "he could not afford it." *Id.*

**2.    Standard**

The standard for summary judgment is well established.  This standard is found in Rule 56 of the Federal Rules of Civil Procedure, which provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Pursuant to Rule 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  In making this determination, the evidence "must be viewed in the light most favorable" to the non-moving party.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, summary judgment is appropriate if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The "mere existence of a scintilla of evidence in support of the [opposing party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]."  *Anderson*, 477 U.S. at 252.

10

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323.  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  "Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

**3.  Discussion**

Plaintiff asserts claims against Dr. David Weil, Dr. Andrew Eddy, and John Gardner in their official and individual capacities pursuant to 42 U.S.C. § 1983.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  A *prima facie* case under § 1983 requires evidence of (1) conduct by an individual acting under color of state law, and (2) the deprivation of a right secured by the Constitution or laws of the United States.  *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199,

11

1202 (6th Cir. 1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 535
(1981)).  Section 1983 merely provides a vehicle for enforcing
individual rights found elsewhere and does not itself establish any
substantive rights.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 285
(2002).

        In the case presently before the Court, plaintiff alleges that
defendants acted with deliberate indifference to his medical needs in
violation of the Eighth Amendment to the United States Constitution.

        **a.    Official Capacity Claims**

        Plaintiff alleges that defendants are liable in their official
capacities for denying him medical care in contravention of the Eighth
Amendment to the United States Constitution.  *Amended Complaint*, ¶ 9.
Official capacity suits "'generally represent only another way of
pleading an action against an entity of which an officer is an
agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting
*Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).
"[A]n official-capacity suit is, in all respects other than name, to
be treated as a suit against the entity."  *Id.* (citing *Brandon v.
Holt*, 469 U.S. 464, 471–72 (1985)).  The government entity in the
instant action is the ODRC.  This state agency is immune from suit in
this Court by virtue of the Eleventh Amendment to the United States
Constitution.  *See Beil v. Lake Erie Corr. Records Dept.*, 282 F. App'x
363 (6th Cir. 2008).  *See also Regents of Univ. of Cal. v. Doe*, 519
U.S. 425, 429 (1997) (Eleventh Amendment sovereign immunity applies
not only to the states themselves but also to "state agents and
instrumentalities").

12

The Eleventh Amendment does not, however, preclude official capacity claims for certain forms of prospective injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908). The injunctive relief sought by plaintiff, however, does not fall within that category of relief permitted by the Eleventh Amendment.

Plaintiff seeks monetary damages, a judgment declaring that defendants' failure to provide medical care was violative of the Eighth Amendment to the United States Constitution, and an injunction ordering defendants to pay for plaintiff's surgery and rehabilitation. *Amended Complaint*, ¶ 10.  The declaratory judgment sought by plaintiff would be retroactive in nature, *see Sandy Frank Prods. LLC v. Mich. Film Office*, No. 11-10933, 2012 WL 12752, at *4 (E.D. Mich. Jan 4, 2012), and the injunction requested by plaintiff is for monetary relief.  *See Ernst v. Rising*, 427, F.3d 351, 368 (6th Cir. 2005) (citing *Barton v. Summers*, 293 F.3d 944, 949 (6th Cir. 2002)). Because plaintiff seeks only retroactive relief and monetary damages, defendants are entitled to Eleventh Amendment immunity on plaintiff's official capacity claims.

It is therefore **RECOMMENDED** that *Defendants' Motion for Summary Judgment* be **GRANTED** with respect to plaintiff's claims under § 1983 against all remaining defendants in their official capacity.

## b.    Individual Capacity Claims

Plaintiff also alleges that defendants are liable in their individual capacities for denying him medical care in contravention of the Eighth Amendment to the United States Constitution.  *Amended*

13

*Complaint*, ¶ 9.  Plaintiff specifically alleges that "he was denied necessary surgery and rehabilitation for a rotator cuff tear[.]" *Id.*

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment.  To prevail on his claims against each defendant, plaintiff must prove that the defendant acted with "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).  This standard includes both an objective and a subjective component.  The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  The subjective component requires a plaintiff to "allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).  However, "a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer*, 511 U.S. at 835).  "Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Id.* (quoting *Farmer*, 511 U.S. at 836).

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *McCarthy v. Place*, 313 F. App'x 810, 814 (6th Cir. 2008) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

14

Although defendants argue that plaintiff did not suffer a serious
medical need, they concede that plaintiff suffered from a rotator cuff
tear. *Defendants' Motion for Summary Judgment*, p. 27.  Courts have
found that a torn rotator cuff presents a serious medical need.  *See*
*Kostyo v. Harvey*, No. 1:09CV2509, 2010 WL 3522449, at *8 (N.D. Ohio
Sept. 8, 2010) ("Severe shoulder pain, including a possible rotator
cuff tear, may qualify as a serious medical need."); *Palmer v. Randle*,
No. 10-cv-718, 2011 WL 2470062, at *4 (S.D. Ill. June 20, 2011) ("A
torn rotator cuff . . . is the sort of chronic, painful condition that
a layperson would find objectively serious."); *Thomas v. Neves*, No.
2:07-CV-01249, 2010 WL 1644789, at *3 (E.D. Cal. Apr. 21, 2010)
(concluding that a rotator cuff tear is a serious medical need).  This
Court concludes that a reasonable jury could find that plaintiff
suffered a serious medical need.

As discussed *supra*, the subjective component of plaintiff's
Eighth Amendment claim requires that the facts alleged by the
plaintiff, if true, show that the official "subjectively perceived
facts from which to infer substantial risk to the prisoner, that he
did in fact draw the inference, and that he then disregarded that
risk." *Comstock*, 273 F.3d at 703 (citing *Farmer*, 511 U.S. at 837).
Although officials may not deliberately disregard a medical need,
"[m]edical malpractice does not become a constitutional violation
merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.
Inadvertent failure or negligence in providing medical care does not
rise to the level of a constitutional deprivation, as deliberate

15

indifference "describes a state of mind more blameworthy than
negligence." *Farmer*, 511 U.S. at 835.

Nevertheless, a plaintiff is not required to show that the
official acted "for the very purpose of causing harm or with knowledge
that harm will result." *Id.* Liability can be found if a prison
official "knows that inmates face a substantial risk of serious harm
and disregards that risk by failing to take reasonable measures to
abate it." *Id.* at 847.

In the case presently before the Court, the evidence is
insufficient to find that defendants acted with the requisite *mens
rea*. Plaintiff allegedly injured his right shoulder in May 2010 while
climbing into his bunk. *Defendants' Motion for Summary Judgment*,
Exhibit A-1. After two visits to Nurses Sick Call, plaintiff treated
with Dr. Weil on June 4, 2010. *Dr. Weil Affidavit*, ¶ 10; *Defendants'
Motion for Summary Judgment*, Exhibit A-3, p. 2. Dr. Weil noted that
plaintiff had shoulder pain and suggested that plaintiff may have
suffered a rotator cuff tear. *Dr. Weil Affidavit*, ¶ 10; *Defendants'
Motion for Summary Judgment*, Exhibit A-3, p. 2. Dr. Weil prescribed
ibuprofen, 800 mg, for a two month period and a shoulder sling; he
also ordered an orthopedic consultation, x-rays, and a bottom bunk
restriction. *Dr. Weil Affidavit*, ¶ 11; *Defendants' Motion for Summary
Judgment*, Exhibit A-5, p. 2; Exhibit A-12. On October 14, 2010, Dr.
Weil reviewed with plaintiff the results of the September 23, 2010 MRI
of the right shoulder. *Defendants' Motion for Summary Judgment*,
Exhibit A-17. Dr. Weil also noted that plaintiff "would take surgery
if offered." *Id.* Dr. Weil referred plaintiff for a follow-up

16

orthopedic consultation.  *Id*.  Plaintiff treated with the consultative

orthopedist on December 5, 2010; the doctor's treatment notes

indicate: "To OR for repair."  *Defendants' Motion for Summary*

*Judgment*, Exhibit A-17.

    Dr. Weil cancelled plaintiff's surgery on March 4, 2011, as "not

immediately medically necessary" and ordered doctor's sick call "if

pain persists."  *Id*. at Exhibit A-28.  Dr. Weil explains the

cancellation of plaintiff's surgery as follows:

> On March 4, 2011 I entered my physician's order stating
> "cancel surgery, DSC [doctors sick call] if pain persists."
> It must be emphasized that no date for surgery ever
> existed.  The order for "cancellation" simply stopped the
> scheduling process which might have ended up with a surgery
> date.  I did this after I was notified that surgery had yet
> to be scheduled.  I realized at that time that it had been
> almost ten months since his injury and that the window for
> optimal surgical repair was almost certainly passed. . . .
> This decision was based upon the medical literature as it
> pertains to the unsettled debate regarding the timing of
> and the appropriate candidates for operative rotator cuff
> repair.  Specifically, one will see reference to the age of
> the patient and the age of the injury.  The closer a
> patient is to sixty-years of age and an injury greater than
> six-weeks old tends to predict much poorer surgical
> outcomes.  Rotator cuff tears can be managed without
> surgical intervention.  In addition, I offered doctor's
> sick call if pain persists inviting Mr. Hurst to follow-up
> if his shoulder continued to bother him.

*Dr. Weil Affidavit*, ¶ 39.

    Although there is evidence that Dr. Weil was aware of plaintiff's

rotator cuff tear, there is no evidence to suggest that Dr. Weil

subjectively perceived facts from which to draw an inference that

cancellation of surgery (or, as defendants argue, cancellation of the

process of scheduling surgery) created a substantial risk of harm to

plaintiff.  *See Dr. Weil Affidavit*, ¶ 39 ("The closer a patient is to

sixty-years of age and an injury greater than six-weeks old tends to

predict much poorer surgical outcomes."); Doc. No. 37, Appendix 7, pp. 2-5 ("Rotator cuff repairs are more predictably repairable within a few months of injury."); *Affidavit of Defendant Andrew Eddy, M.D.*, Doc. No. 96-39 ("*Dr. Eddy Affidavit*"), ¶ 26 ("Dr. Weil found it to be not medically necessary to continue to attempt to have this surgery scheduled and then completed. Dr. Weil based this decision on current medical evidence regarding rotator cuff repairs and I concurred with him."). There is also no evidence that surgical repair is the only acceptable method of treating a supraspinatus tear. To the contrary, both Dr. Eddy and Dr. Weil aver that non-surgical treatment is possible and appropriate. *Dr. Eddy Affidavit*, ¶ 27 ("Current medical evidence indicates nonsurgical management is appropriate in isolated supraspinatus tears that occur in older individuals and those that occur with minimal trauma, as in this case. Mr. Hurst age 57 at the time of his injury, tore his rotator cuff with the simple motion of pulling himself up into bunk bed."); *Dr. Weil Affidavit*, ¶ 39 ("Rotator cuff tears can be managed without surgical intervention."). Moreover, plaintiff has not presented any evidence that his medical care was inadequate, let alone "so woefully inadequate as to amount to no treatment at all." *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). *See also McCarthy v. Maitland Place, D.D.S.*, 313 F. App'x 810, 814 (6th Cir. 2008). Accordingly, plaintiff cannot satisfy the subjective component with respect to Dr. Weil. Although plaintiff may disagree with his course of medical treatment, he has failed to articulate facts or produce evidence to suggest that Dr. Weil acted with deliberate indifference.

18

Similarly, plaintiff cannot satisfy the subjective component with respect to Dr. Eddy and John Gardner.  Dr. Eddy and John Gardner allegedly participated in the decision to cancel plaintiff's surgery in March 2011.  *See Amended Complaint*, ¶ 11.  Neither Dr. Eddy nor John Gardner treated plaintiff and there is no evidence to suggest that either defendant was aware of plaintiff's torn rotator cuff prior to March 2011.  As discussed *supra*, there is also no evidence that cancellation of surgery in March 2011 (or, as defendants argue, cancellation of the process of scheduling surgery) created a substantial risk of harm to plaintiff.  Accordingly, plaintiff cannot satisfy the subjective component with respect to Dr. Eddy and John Gardner.

The remaining defendants are therefore entitled to summary judgment on plaintiff's claims against them in their individual capacity.

Plaintiff has not raised a genuine issue of material fact and defendants are entitled to judgment as a matter of law on all of plaintiff's claims.  It is therefore **RECOMMENDED** that *Defendants' Motion for Summary Judgment*, Doc. No. 96, be **GRANTED.**

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections

19

must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


August 7, 2014                                    *s/Norah McCann King*
                                                Norah M$^c$Cann King
                                          United States Magistrate Judge